SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ETHAN G. BODELL, PA #321830**
Special Assistant United States Attorney
Ethan.Bodell@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00057-MTK** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **TAMARA FULMER,** | |
| **Defendant.** | |

## I.     Introduction

Only months after the government expanded unemployment benefits to help struggling individuals who lost their jobs survive the COVID-19 pandemic, Tamara Fulmer started submitting fraudulent unemployment claims causing a loss of $567,930.  Fulmer submitted 27 claims using 27 people's personal information (in addition to her own) – sometimes with, but sometimes without their knowledge that the applications were for unemployment insurance. Fulmer had most of the checks sent to her own address and deposited at least $68,773 into her own account.  But because she cashed many of the checks without the applicants' knowledge, it remains unknown exactly how much of the $567,930 she kept for herself.

**Government's Sentencing Memorandum**                                                    **Page 1**

The government recommends the Court sentence Fulmer to 37 months in prison to hold her accountable for her conduct.

## II.    Procedural Posture

On February 20, 2025, the grand jury indicted Fulmer on one count of theft of government benefits in violation of 18 U.S.C. § 641.  ECF No. 1.  The indictment contained a forfeiture allegation.  On November 4, 2025, pursuant to a plea agreement, Fulmer pleaded guilty to the indictment and admitted the forfeiture allegation.  ECF Nos. 26–28.

## III.    Nature and Circumstances of the Offense

In the midst of the COVID-19 pandemic, Fulmer spent almost 18 months using 27 individuals' personally identifying information (PII)—including their social security numbers and dates of birth—to apply for fraudulent federal pandemic unemployment insurance (UI) benefits.[1]  Because applicants had to submit proof that their unemployment was a result of the pandemic, Fulmer submitted a notarized letter with each of the 27 applications wherein she claimed that before the pandemic, each named applicant worked on her properties, worked a certain number of hours, and was paid between $150 and $200 per month.  She claimed these were her "regular employees" who only stopped working for her because of the pandemic.  Each letter for each application was practically identical.  Two examples are below:

---

[1] Specifically, Fulmer submitted applications for benefits under the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and Lost Wages Assistance Program (LWAP).  Collectively, these are referred to herein as "UI benefits."

**Government's Sentencing Memorandum**                                        **Page 2**



If Fulmer's claims had been true, she would have paid the named applicants over $60,000 between December 2018 and February 2020. In reality Fulmer had no employees, and a few named applicants told law enforcement Fulmer paid them, at most, a "few bucks" for doing yardwork for their friend. In addition to submitting the initial applications and bogus letters, Fulmer completed weekly certifications for each applicant to ensure the money kept flowing.

Some individuals knew Fulmer was submitting these claims on their behalf because she had promised to help get them benefits in exchange for a flat fee or percentage of their funds, which she often had them sign in a binder along with their PII (snapshotted below on Page 4). Other individuals did not know what type of benefits Fulmer sought on their behalf and told law enforcement they would not have had her submit the applications had they known it was for unemployment.

 

To ensure the benefits went directly to her instead of many of the named applicants, Fulmer requested the benefits be paid out by check or on a prepaid debit card, and often put her own mailing address, phone numbers, or e-mail addresses on the claims. While some applicants received money and then paid Fulmer her cut, Fulmer personally deposited at least 236 UI checks totaling $68,773 into her own account. She also cashed many checks at a gas station, so it remains unknown exactly how much money she kept for herself.

One applicant reported that she initially agreed for Fulmer to submit her application, received 64 checks to her own address, and then Fulmer "hijacked [her] account," changed the PIN# to the account, and switched the address of record to Fulmer's own so the checks were mailed to Fulmer instead. After this happened, 52 checks in that applicant's name were sent directly to Fulmer's address. Fulmer signed the applicant's name on 22 of them—totaling $5,555—and deposited them into her own account without the applicant's knowledge or permission.

**Government's Sentencing Memorandum**          **Page 4**

In addition to her scheme with others' PII, Fulmer also submitted her own fraudulent UI application on which she claimed she had not applied for or received "any amounts for loss of wages due to illness or disability" even though she'd been receiving disability payments since 2004. This caused an additional loss of $13,353.

In total, Fulmer's conduct caused the Oregon Employment Department (OED) to pay out $581,283.

## IV.    The Presentence Report

On March 27, 2026, Probation disclosed the final PSR to the parties and issued its Sentencing Recommendation.

### A.    Defendant's Total Offense Level is 17.

In the PSR, Probation concluded that defendant's total offense level is 17, calculated as follows:

| Description | Level | Guideline Section |
|---|---|---|
| Base Offense Level | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss of $581,283 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| **Total:** | **17** | |

PSR ¶¶ 31–41.

### B.    Defendant is in Criminal History Category IV.

The PSR concluded that defendant is in Criminal History Category IV because defendant has 9 criminal history points. PSR ¶ 65. This results from 8 points for prior offenses, plus an additional point because defendant was on probation at the time of the instant offense. PSR ¶ 64.

**Government's Sentencing Memorandum**                                                    **Page 5**

### C.       Probation Recommended a Sentence of 24 Months' Imprisonment.

With a total offense level of 17 and a criminal history category of IV, Probation determined that defendant falls within an advisory Guidelines range of 37–46 months' imprisonment.  PSR ¶ 113; U.S.S.G. § 5A (Sentencing Table).  In its Recommendation Letter, Probation recommended a sentence of 24 months' imprisonment.  PSR Sent. Rec. at 1.

## V.      The Government's Position on the Presentence Report

The United States concurs with Probation's offense level calculation and criminal history computation in the PSR but respectfully disagrees with its recommended sentence of a 24-month term of imprisonment (i.e., a four-level downward variance).

## VI.     The United States' Recommended Sentence and Section 3553(a) Analysis

In the parties' plea agreement, the United States agreed to recommend a sentence at the low end of the applicable guideline range.  ECF No. 27 at ¶ 10.  Accordingly, the United States respectfully requests the following sentence: (1) 37 months' imprisonment; (2) no fine; (3) a $100 special assessment; (4) $581,283 in restitution; and (5) three years of supervised release.

The United States believes a 37-month sentence is "sufficient, but not greater than necessary" as it appropriately balances the nature, circumstances, and seriousness of the offense, defendant's history and characteristics, the need to provide deterrence and promote respect for the law, and the need to avoid unwanted sentencing disparities.  *See* 18 U.S.C. § 3553(a).

### A.       Nature, Circumstances, and Seriousness of the Offense

Defendant's crimes were serious.  In the midst of a devastating pandemic, she lied on 27 claims using 27 different people's PII to fraudulently obtain benefits intended to help individuals survive the pandemic.  Her fraud did not stop at the initial application, though.  She went through the effort of getting fraudulent affidavits notarized to ensure her scheme would pay.  And once it

**Government's Sentencing Memorandum**                                      **Page 6**

did, to ensure the money did not stop flowing, defendant did *weekly* fraudulent certifications as to the truth of the applications—for each of the applicants and herself.  In total, she caused the OED to pay out $581,283 in unemployment benefits.  Given defendant's weekly, sometimes daily criminal conduct, the seriousness, nature, and circumstances of the crime support a term of imprisonment of 37 months.

**B.     Defendant's History and Characteristics**

Defendant's history and characteristics contain both mitigating and aggravating factors. The PSR indicates Fulmer, now 48, had a difficult upbringing due to her parents' divorce and strained relationships with her respective stepparents, both of whom were abusive.  PSR ¶¶ 81–82.  Fulmer began using alcohol, marijuana, and cocaine in her teens and methamphetamine in her 20s.  PSR ¶¶ 101–104.  She also has a lengthy criminal history including convictions for:

- Harassment and Criminal Mischief (2003)
- Driving Under the Influence (2003)
- Manufacturing Marijuana (2003)
- Burglary and Possession of Methamphetamine (2004)
- Driving While Suspended (2005)
- Driving While Suspended (2005)
- Possession of Methamphetamine (2010)
- Possession of Methamphetamine (2011)
- Possession of Methamphetamine (2012)
- Driving Under the Influence and Criminal Mischief (2017)
- Driving While Suspended, Reckless Driving, and Reckless Endangerment (2018)
- Driving While Suspended (2019)
- Driving While Suspended (2020)
- Driving While Suspended (2020)
- Driving While Suspended (2021)
- Driving While Suspended (2022)
- Driving While Suspended (2022)
- Supplying Contraband (2023)
- Driving While Suspended (2024)

PSR ¶¶ 44–62.  At the time she commenced the instant offense in May of 2020, Fulmer was on probation following her conviction in the 2018 case.  PSR ¶ 54.

On balance, these factors support the United States' low-end recommendation of 37 months' imprisonment.

**C.      Need to Afford Adequate Deterrence, Protect the Public and Promote Respect for the Law**

Disaster relief loan programs have historically been plagued with fraud schemes, and the expansion of UI benefits during the COVID-19 pandemic are no exception.  The schemes range from simple—individuals claiming more than they were entitled to—to complex—stealing PII or creating identities to steal hundreds of thousands of dollars in benefits.  Fulmer's scheme is somewhere in between, as she used the PII of others, sometimes with and sometimes without their permission, and kept much of the money for herself.

A term of 37 months' imprisonment is sufficient to protect the public and promote respect for the law.  General deterrence is particularly important in white collar cases because would-be offenders need to be put on notice that there are consequences for this type of criminal conduct.  *See United States v. Heine*, No. 3:15-cr-238-SI, 2018 U.S. Dist. LEXIS 99922, *5–6 (D. Or. June 14, 2018) ("White collar crime is peculiarly amendable to general deterrence [because] white collar criminals, oftentimes, premeditate their crimes and engage in a cost-benefit analysis."); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.  Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment."); *United States v. Goffer*, 721

**Government's Sentencing Memorandum**                                              **Page 8**

F.3d 113, 132 (2d Cir. 2013) (addressing the need for general deterrence for those who might otherwise feel that some white-collar crimes are "game[s] worth playing"). This is particularly true in cases like this one, where defendant submitted numerous fraudulent applications—sometimes without the applicant's knowledge—to steal hundreds of thousands of dollars intended to help individuals during a worldwide pandemic. When the next national disaster arises, potential fraudsters need to know that stealing federal funds has consequences.

### D.     Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires a court to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty for similar conduct." According to Probation, during the last five fiscal years, there were 13 defendants whose primary guideline was Section 2B1.1, with a total offense level of 17 and criminal history category of IV. PSR ¶ 129. For the 11 defendants who received a sentence of imprisonment, the average length of imprisonment imposed was 33 months and the median length of imprisonment was 37 months. *Id.* Accordingly, the United States' recommended 37-month term of imprisonment would comport squarely with that median sentence and would avoid any unwarranted sentencing disparities among similarly-situated defendants convicted of this offense.

## VII.    Restitution and Forfeiture

Fulmer agreed in her Plea Agreement (¶ 15) that she would pay $581,283 in restitution to the Oregon Employment Department. This amount should be reduced by any amount she has paid at the time of sentencing. Fulmer also agreed in her Plea Agreement (¶ 16) to a money judgment in the amount of $567,930. The government requests the preliminary order of forfeiture (ECF No. 29) become final after sentencing.

**Government's Sentencing Memorandum**                                    **Page 9**

## VIII.    Conclusion

Based on the foregoing, the Court should sentence defendant Tamara Fulmer to 37 months in prison, restitution of $581,283, three years of supervised release, and a $100 fee assessment.

Dated: April 8, 2026.                    Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

MEREDITH D.M. BATEMAN
Assistant United States Attorney

*/s/ Ethan Bodell*
ETHAN G. BODELL, PA #321830
Special Assistant United States Attorney

**Government's Sentencing Memorandum**                    **Page 10**